**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUESETTS**

| | | |
|---|---|---|
| JOSEPH HARRINGTON, individually and on behalf of all others similarly situated | ) | Case No. 1:16-cv-10133 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Complaint Filed: January 28, 2016 |
| | ) | |
| TETRAPHASE PHARMACEUTICALS, INC. GUY MACDONALD, JOHN CRAIG THOMPSON, and DAVID LUBNER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| DAN SCHLAPKOHL, individually and on behalf of all others similarly situated | ) | Case No. 1:16-cv-10577 |
| | ) | |
| Plaintiff, | ) | Complaint Filed:  March 23, 2016 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| TETRAPHASE PHARMACEUTICALS, INC. GUY MACDONALD, JOHN CRAIG THOMPSON, and DAVID LUBNER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF DARYLL HANDELL'S MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HIS MOTION AND IN OPPOSITION TO ALL OTHER MOTIONS**

Movant Daryll Handell ("Movant Handell") respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Gainey McKenna & Egleston ("GM&E") as Lead Counsel and Smith Duggan Buell & Rufo LLP ("Smith Duggan") as Liaison Counsel and in opposition to the competing motions filed by: (i) Newvana Ventures Limited ("Newvana") (1:16-cv-10133-LTS, D.E. 23); (ii) Plymouth County Retirement System ("Plymouth County") (1:16-cv-10133-LTS, D.E. 17; 1:16-cv-10577-LTS, D.E. 9); and (iii) Dan Schlapkohl ("Schlapkohl") and Gustavo Rivera de la Fuente ("de la Fuente") (collectively, the "Schlapkohl Group") (1:16-cv-10133-LTS, D.E. 12; 1:16-cv-10577-LTS, D.E. 4).[1]

## I.   ARGUMENT

### A.   <u>Movant Handell Is The Only Adequate Movant For Lead Plaintiff</u>

Movant Handell has a substantial financial interest in the litigation as (1) he has lost over $166,000 from his purchases of Tetraphase Pharmaceuticals, Inc. ("Tetraphase or the "Company") common stock during the Class Period[2]; (2) he does not suffer from *Dura*[3] loss causation issues like movants Newvana and de la Fuente; (3) he is not a "professional plaintiff" like Plymouth County; (4) he is not a short seller like de la Fuente; and (5) he has submitted an accurate certification unlike movants Schlapkohl and de la Fuente.[4]

---

[1]   On April 8, 2016, the Massachusetts Water Resources Authority Employees' Retirement Board ("MWRA") (1:16-cv-10133-LTS, D.E. 20) withdrew its motion by email.

[2]   The "Class Period" is defined as March 5, 2015 through September 8, 2015.

[3]   *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

[4]   De la Fuente claims that he sold 23,846 Tetraphase common stock on September 15, 2015. However, according to public records, Tetraphase common stock did not trade at $11.00 on that day as claimed on his certification.

The PSLRA directs a court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(I).  The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is a person or group of persons that (1) either filed the complaint or made a motion in response to a notice, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23 ("Rule 23").  *Id.* § 78u-4(a)(3)(B)(iii)(I)

For the reasons discussed below, the other movants do not satisfy Rule 23:

**B.     The Schlapkohl Group Is a Lawyer-Driven
        Amalgamation of Unrelated Investors Who Fail to Offer Any
        <u>Justification for the Court to Aggregate Their Financial Interest</u>**

Even those courts that have allowed investors to seek appointment together as a group, nonetheless caution that courts "should still evaluate the structure of the group to ensure that the lead plaintiffs, not the attorneys, are in the driver's seat."  *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 45 (D. Mass. 2001).  In order to evaluate unrelated groups of investors who want to serve as lead plaintiff together, courts can consider the "multi-factor analysis . . . [which] relies on no single factor, but instead requires a group to explain and justify its composition and structure to the court's satisfaction . . . .  Under this approach, a court may consider all relevant factors, such as descriptions of [the group's] members, including any ***pre-existing relationships*** among them; an explanation of ***how its members would function collectively***; and a description of the ***mechanism*** that its members and the proposed lead counsel have established ***to communicate*** with one another about the litigation."  *Id.* (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 434-435 (E.D. Va. 2000)) (internal quotations omitted) (emphasis added).

Here, the Schlapkohl Group[5] offers no indication that its members shared a pre-existing relationship.  "Indeed, nothing in the parties' submissions indicates that [the group] had an existing relationship prior to the commencement of this action, or that their aggregation is anything but an attempt to create the highest possible financial interest under the PSLRA." *City of Roseville Employees' Ret. Sys. v. Textron, Inc.*, C.A. No. 09–00367–ML, 2009 U.S. Dist. LEXIS 117263, *6 (D.R.I. Dec. 4, 2009) (noting the geographical separation of the proposed group members).  "The only tie that binds them in this litigation is representation by the same law firm[s]." *Id.*

Moreover, the Schlapkohl Group fails to describe how its members would function cohesively in representing the Class.  Specifically, with two members, how will a decision be made among the group?  Will there be a vote?  If so, does each member have one vote or is their vote weighted relative to their financial loss?   None of these questions are answered.  Additionally, the Schlapkohl Group fails to explain the "mechanism that its members and the proposed [co-]lead counsel have established to communicate with one another about the litigation[]" or even why co-lead counsel is necessary in this litigation.  *In re Lernout & Hauspie*, 138 F. Supp. 2d at 45; *see also Arkansas Teacher Retirement Sys. v. Insulet Corp., et al.*, C.A. No. 15-12345-MLW, 2016 WL 1298966, at * (D. Mass. Mar. 31, 2016) (unlike here where the Schlapkohl Group has failed to submit a declaration, the court in *Insulet* allowed a group because

---

[5]     Movant Schlapkohl is a seller of call options.  A seller of call options -- particularly of uncovered call options -- may be harmed by significant gains in the stock price and will profit only if the stock price falls or does not materially rise.  Further, movant Schlapkohl's certification states that he ***purchased*** 5 shares of Tetraphase common stock on March 27, 2015 at $6.40 but the supporting document attached to the certification states that he ***sold*** five (5) Nov. 20, 2015 $40 call options, ***not*** shares, on March 27, 2015 at $6.40.   Moreover, movant Schlapkohl's certification states that he ***purchased*** 11 shares of Tetraphase common stock on March 27, 2015 at $6.50 but the supporting document attached to the certification states that he ***sold*** eleven (11) Nov. 20, 2015 $40 call options, ***not*** shares, on March 27, 2015 at $6.50.

the movants stated in a declaration that "they, rather than their counsel, made the decision to move for appointment as a lead plaintiff group"; "[t]hey also report that they have discussed how duties will be shared among the three organizations and how they will communicate with each other and with lead counsel"; and [t]hey also recognize their duty to direct litigation and monitor lead counsel's actions.").[6]

### C.    Plymouth County Retirement Is A Professional Plaintiff

Even if the Plymouth County had the requisite financial interest, it should not be appointed pursuant to the PSLRA's "professional plaintiff" prohibition, which states that "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than *5 securities class actions* brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period."   15 U.S.C. § 78u-4(a)(3)(B)(vi).   This issue was discussed extensively in *Cunha v. Hansen Natural Corp.*, Nos. ED CV 08–01249–SGL(JCx), 2009 WL 2029797 (C.D. Cal. July 13, 2009), where the court rejected the motion of an institution that ran afoul of the rule.   *Id.*, at *7 ("Given the presence of an alternative institutional investor who stands ready and able to assume the function, given the degree to which NJCPF has exceeded the 5–in–3 rule, and given the degree to which NJCPF has sought to be appointed lead plaintiff, the Court declines to exercise its discretion to permit deviation from the 5–in–3 rule in this instance").

As indicated by its "Certification Pursuant to the Federal Securities Laws," Plymouth County "sought to serve and serves or served as a representative party" in the following ten (10) actions within the past three (3) years:

---

[6]    On September 15, 2015, de la Fuente sold 12,946 shares of Tetraphase common stock. This was either a short sale or a sale of shares previously held.

- *Van Noppenn v. Innerworkings, Inc.*, 14-cv-01416 (N.D. Ill) (***serving presently as lead plaintiff***);

- *Norfolk County Retirement Sys. v. Temnpur-Pedic Int'l, Inc.*, 12-cv-00195 (E.D. KY) (***serving presently as lead plaintiff***);

- *Medoff v. CVS Caremark Corp., et al.*, 1:09-cv-00554 (D. RI) (***serving presently as lead plaintiff***) (***not listed on the certification***);

- *Plymouth County Retirement Sys. v. Model N Inc., et. al.*, Case No. CIV 530291 (Sup. Ct. Cal. San Mateo Cty.) (Complaint for Violations of the Securities Act of 1933) (***serving presently as lead plaintiff***);

- *Norfolk County Retirement Sys., and Plymouth County Retirement Sys. v. Judith L Craven, et. al.*, Case No. 8732 (Del. Chancery) (***serving presently as lead plaintiff***); and

- *Plymouth County Retirement Sys. v. SafeNet Incorporated, et al.*, Case No. 2782-N (Del. Chancery) (***serving presently as lead plaintiff***).

- *North Collier Fire Control and Rescue District Firefighter Pension Plan v. MDC Partners, Inc.*, No.: 1:15-cv-06034-RJS (S.D.N.Y.) (***sought to serve as a lead plaintiff***);

- *Garavaglia v. Western Union Co.*, 1:14-cv-00278-MSK-BNB (D. Colo.) (***sought to serve as a lead plaintiff***);

- *In re ITT Educational Services, Inc., Sec. Litig.*, No. 1:13-cv-1620 (JPO) (S.D.N.Y.) (***sought to serve as a lead plaintiff***); and

- *Baron v. Angie's List, Inc.*, No.: 1:13-cv-2032-WTL-TAB (S.D. Ind.) (***sought to serve as a lead plaintiff***).

Accordingly, as best can be seen from the record, Plymouth County is currently serving in as many as six (6) cases in the past three (3) years, and should not be appointed for that reason. *See, e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 199) (holding that pension fund was "presumptively barred from serving as lead plaintiff" as it was "'currently serving as a lead plaintiff or co-lead plaintiff in six such actions'"). Plymouth County is a serial filer, having moved in over seven (7) cases in just the last three years. *See id.*

at 1156 ("Congress also desired to increase client control over plaintiff's counsel, and allowing simultaneous prosecution of six securities actions is inconsistent with that goal.").

Given Movant Handell's readiness and willingness to serve as lead plaintiff, there is no reason to jeopardize the action and any potential recovery by tasking Plymouth County with yet another lead plaintiff position. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999 (explaining that "an institutional investor that is simultaneously involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct").

### D.      **Movant Newvana Sold More Than Half Its Shares Prior To The Disclosure**

In 2005, the Supreme Court held that to prove the loss causation element of a Section 10(b) claim, a plaintiff must establish more than that he purchased securities in an inflated market, he must show that the loss he suffered is attributable to the alleged misrepresentations, which in most cases is done by showing that the stock fell when the truth was disclosed. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  A corollary of that holding is that, "[I]f the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.*

In this action, the corrective disclosure occurred on September 8, 2015 after the close of trading.  Over 56% of Newvana's "financial interest" is attributable to stock sales that occurred prior to the corrective disclosure.  If such transactions are excluded, as they should be, the Newvana's financial interest is less than reported.

### E.      **In the Alternative, The Court Has the Discretion to Appoint Individual and Institutional Investors as Co-Lead Plaintiffs to Benefit the Class**

The Court has the authority to appoint the "member or members of the purported plaintiff class that the [C]ourt determines to be most capable of adequately representing the interests of

class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *In re Tyco Int'l, Ltd. Sec. Litig.*, Nos. 00–MD–1335–B, 2000 DNH 182, 2000 WL 1513772 at *4 (D. N.H. Aug. 17, 2000) (appointing three lead plaintiffs and noting that "while a group comprised of many small shareholders might be unwieldy and lack the proper incentive to serve as an effective lead plaintiff . . . a group that consists of a small number of large shareholders should be capable of managing this litigation and providing direction to class counsel."). Courts often appoint co-lead plaintiffs comprised of institutions and individual investors to ensure that all class members are properly represented and that the potential recovery for all class members is maximized.[7] *See, e.g.*, *In re Oxford Health Plans Inc., Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) (appointing both institutional investors and individual investors as lead plaintiff "ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants."); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) ("The Court also finds that with the appointment of one lead plaintiff who is an individual private investor and one lead plaintiff that is an institutional investor, the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone.").[8]

---

[7]     Investor interests are optimized when courts appoint a qualified individual investor as co-lead plaintiff with an institutional investor. David H. Webber, *The Plight of the Individual Investor in Securities Class Actions*, 106 Northwestern Univ. L. Rev. 157 (2012) ("Institutions can hardly complain if qualified and credible individual lead plaintiffs help push their settlements towards higher monetary compensation and more effective deterrence.").

[8]     *See also Plumbers & Pipefitters Local 51 Pension Fund v. First BanCorp.*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (appointing two individual investors and an institutional investor that "could collectively fulfill the functions of lead plaintiff in a fair, adequate, and effective manner"); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003) (stating that the appointment of an individual investor and an institutional investor "will ensure

Appointment of both institutional and individual investors with substantial losses protects the class from potential class certification issues, including avoiding a conflict between institutional and individual investors, and provides strategic flexibility in litigating the action. *In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483 (D.N.J. 2001) (finding that appointing a co–lead plaintiff would provide "additional representation [that] may benefit the class and provide flexibility, if needed, in the future"); *Johnson v. Pozen Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008) ("[A]n institution/individual Co–Lead Plaintiff structure will provide a diversity of representation and also protect the interests of the class at class certification in the event that either Rodriguez or the Pension Fund later leaves the action for whatever reason.") (citing cases).

Additionally, appointing both types of investors as co-lead counsel ensures that counsel are overseen by investors with unique perspectives, which fully represent the interests of the entire class. *See Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. CIV. A. 00-152 (JEI), 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000) ("It is the intention of the Court to appoint DeValle, Green and the Treasurer of the State of Connecticut as co-lead plaintiffs pursuant to the PSLRA. Connecticut has the largest financial interest in the suit, and the interest of DeValle and Green, combined, is the second largest. The Court also considers it desirable to have both an institutional investor, like Connecticut, and individual investors, like DeValle and Green, included as lead plaintiffs since each may bring a unique perspective to the litigation.").

## II.    CONCLUSION

---

that all class members will be adequately represented in this action"); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 439 (E.D. Va. 2007) (appointing an individual and an institutional investor as co-lead plaintiffs noting the each "will bring a distinct and relevant perspective to this litigation.").

As set forth above, Movant Handell respectfully requests that the Court appoint him lead plaintiff of the instant action, and the law firm of Gainey McKenna & Egleston to be appointed lead counsel for the putative class and the law firm of Smith Duggan Buell & Rufo LLP to be appointed liaison counsel for the putative class.

In the alternative, Movant Handell respectfully requested that the Court appoint him co-lead plaintiff of the instant action, and the law firm of Gainey McKenna & Egleston to be appointed co-lead counsel for the class.

Dated: April 11, 2016

Respectfully submitted,

**SMITH DUGGAN BUELL & RUFO LLP**

By: */s/ Christopher A. Duggan*
Christopher A. Duggan (BBO No. 544150)
99 Summer Street
Suite 1530
Boston, MA  02110-1248
Telephone: (617) 228-4444
Email: Chris.Duggan@SmithDuggan.com

*Proposed Liaison Counsel for the Class*

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Movant Handell*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically this day to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

/s/ Christopher A. Duggan
Christopher A. Duggan (BBO No. 544150)

10