# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH HARRINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TETRAPHASE PHARMACEUTICALS INC., GUY MACDONALD, JOHN CRAIG THOMPSON, and DAVID LUBNER<br><br>Defendants. | Case No. 1:16-cv-10133-LTS<br><br>Hon. Leo T. Sorokin<br><br>**ORAL ARGUMENT REQUESTED** |
| DAN SCHLAPKOHL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TETRAPHASE PHARMACEUTICALS INC., GUY MACDONALD, JOHN CRAIG THOMPSON, and DAVID LUBNER<br><br>Defendants. | Case No. 1:16-cv-10577-LTS<br><br>Hon. Leo T. Sorokin<br><br>**ORAL ARGUMENT REQUESTED** |

**PLYMOUTH COUNTY RETIREMENT SYSTEM'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.    The Standard for Selecting Lead Plaintiff Under the PSLRA......................................2

    II.   Newvana Is Not an Appropriate Lead Plaintiff Because of Its Unique Options Trading Strategy ........................................................................................3

    III.  Plymouth Should Be Permitted to Conduct Limited Discovery into Newvana's Suitability to Lead the Class...................................................................5

CONCLUSION......................................................................................................................6

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Andrada v. Atherogenics, Inc.*,
  No. 05 Civ. 00061(RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ........................1, 2, 3, 4

*Ark. Teacher Ret. Sys. v. Insulet Corp.*,
  C.A. No. 15-12345-MLW, 2016 WL 1298966 (D. Mass. Mar. 31, 2016) ...............................2

*In re Bank One S'holders Class Actions*,
  96 F. Supp. 2d 780 (N.D. Ill. 2000) .........................................................................................5

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .................................................................................................................4

*Brown v. Biogen IDEC Inc.*,
  No. 1:05-cv-10400-WGY (D. Mass. July 26, 2005) ...............................................................6

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) ..........................................................................................2, 3

*Leech v. Brooks Automation, Inc.*,
  No. 06-11068-RWZ, 2006 WL 3690736 (D. Mass. Dec. 13, 2006) ....................................3, 4

*In re Lernout & Hauspie Sec. Litig.*,
  138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................................................1

*Margolis v. Caterpillar, Inc.*,
  815 F. Supp. 1150 (C.D. Ill. 1991) ..........................................................................................3

*In re Michaels Stores, Inc. Sec. Litig.*,
  No. 3:03-cv-00246-M (N.D. Tex. July 10, 2003) ....................................................................6

*In re MicroStrategy Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ......................................................................................5

*In re Sepracor Inc. Sec. Litig.*,
  233 F.R.D. 52 (D. Mass. 2005) ................................................................................................4

*Weikel v. Tower Semiconducter Ltd.*,
  183 F.R.D. 377 (D.N.J. 1998) .............................................................................................3, 5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §74u-4 .......................................................................................................................................2
  §77z-1(a)(3)(B)(iv) ...............................................................................................................2, 5
  §78u-4(a)(3)(B)(iii)(II)(bb) ......................................................................................................3
  §78u-4(a)(3)(B)(iv) ..................................................................................................................6

**INTRODUCTION**

Lead Plaintiff movant, and putative Class member, Plymouth County Retirement System ("Plymouth"), by and through its counsel, respectfully submits this Memorandum of Law in Opposition to the competing motions for appointment of Lead Plaintiff and Lead Counsel, filed by Daryll Handell ("Handell") (ECF No. 15) and Newvana Ventures Limited ("Newvana") (ECF No. 23).[1]

Presently, there are three competing motions for appointment of Lead Plaintiff in the securities class actions, filed against Tetraphase Pharmaceuticals Inc. ("Tetraphase"), Guy MacDonald, John Craig Thompson, and David Lubner (collectively, "Defendants"), before this Court. These motions are governed by the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*, which direct that the movant with the largest financial interest in the case shall be deemed the "presump[tive]" lead plaintiff and shall be appointed, as long as it is otherwise typical and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001).

Here, a review of the competing lead plaintiff motions demonstrates that Plymouth, a pension fund that manages assets for the benefit of employees of Plymouth, Massachusetts, is the movant with the largest financial interest that satisfies Rule 23. Newvana, the only movant that claims a larger loss than Plymouth[2], is not an appropriate Lead Plaintiff because Newvana is an "in and out" options trader, rendering it inadequate under Rule 23 and "subject to unique defenses irrelevant to regular stock purchasers in the class." *Andrada v. Atherogenics, Inc.*, No.

---

[1] After a meet and confer with their counsel, Dan Schlapkohl and Gustavo Rivera De La Fuente, the movant group with the second largest loss, have agreed to withdraw their lead plaintiff motion and support appointment of Plymouth as Lead PLaintiff. Further, movant Massachussetts Water Resources Authority Employees' Retirement Board advised counsel for Plymouth that it will be filing a non-opposition in support of Plymouth's lead plaintiff motion.

[2] Movant Handell has a claimed loss of $166,000.00. This loss is signifiacntly smaller than the loss of $502,683.95 claimed by Plymouth. Accordingly, the lead plaintiff motion filed by Handell should be denied.

1

05 Civ. 00061(RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005); and *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 153-55 (S.D.N.Y. 2010) (holding that plaintiff, as an "in and out" trader that could not establish loss causation, is subject to unique defenses and an inadequate class representative).  As an options trader, Newvana may not have relied directly on the market price of the underlying stock, but instead, relied on the price of the put or call option contracts, which are affected by factors extraneous to the price of the underlying stock, including, "the maturity, the volatility of the price of the [Tetraphase] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded."  *Andrada*, 2005 WL 912359, at *5.  Indeed, considering that the vast majority of Newvana's claimed losses are attributable to its purchases of Tetraphase stock as a result of the exercise of put options *after* the Class Period (ECF Nos. 28-1, 28-2), Newvana's options trading strategy encumbers the putative Class with unique defenses, rendering its claims atypical and Newvana inadequate to be appointed Lead Plaintiff.

Furthermore, Plymouth respectfully requests that the Court allow limited discovery of Newvana, pursuant to 15 U.S.C. §77z-1(a)(3)(B)(iv), because Newvana does not provide any information surrounding its trading and business operations.  These questions will surely be asked by Defendants and the answers may prejudice the putative Class.  By not disclosing such information, Newvana has demonstrated its inadequacy to vigorously represent the interests of the Class and as such, a reasonable basis exists to conduct limited discovery into Newvana.

For the foregoing reasons, and the reasons stated in Plymouth's lead plaintiff motion, Plymouth's motion should be granted and the competing lead plaintiff motions should be denied.

## ARGUMENT

### I.   The Standard for Selecting Lead Plaintiff Under the PSLRA

"Section 101(b) of the PLSRA, codified at 15 U.S.C. § 74u-4, governs the appointment of lead plaintiffs in securities class actions."  *Ark. Teacher Ret. Sys. v. Insulet Corp.*, C.A. No. 15-12345-MLW, 2016 WL 1298966, at *2 (D. Mass. Mar. 31, 2016).  The PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or entity with the largest

financial interest in the relief sought. Competing movants may rebut the lead plaintiff presumption with evidence that it is not adequate or typical to represent the Class. *Leech v. Brooks Automation, Inc.*, No. 06-11068-RWZ, 2006 WL 3690736, at *1 (D. Mass. Dec. 13, 2006) ("In general, then, courts engage in a two-step inquiry to determine which plaintiff should be appointed lead plaintiff. Courts first 'calculat[e] which plaintiff has the largest financial interest,' and second, 'determin[e] whether that candidate meets the typicality and adequacy requirement of Rule 23(a).'" (quoting *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 302 (S.D. Ohio 2005))).

## II. Newvana Is Not an Appropriate Lead Plaintiff Because of Its Unique Options Trading Strategy

Newvana is not an appropriate lead plaintiff because, as shown by its certification and loss chart (ECF Nos. 28-1, 28-2), Newvana is an "in and out" options trader, subject to unique defenses pertaining to whether it relied on the public price of Tetraphase stock when making its trades. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Newvana's status as an "in and out" options trader not only undermines its financial interest, but it also renders Newvana atypical and inadequate to serve as Lead Plaintiff. As numerous courts have held, Newvana's option sales render it "subject to unique defenses irrelevant to regular stock purchasers in the class." *Andrada*, 2005 WL 912359, at *5. As one court explained, options traders are not typical because:

> factual issues specific to . . . determining the precise value of the options-e.g., the maturity, the volatility of the price of the [Tetraphase] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded-would likely "threaten to become the focus of the litigation.

*Id*. (citing *Weikel v. Tower Semiconducter Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998)). *See also IMAX*, 272 F.R.D. at 155 (holding that plaintiff, as an "in and out" trader that could not establish loss causation, is subject to unique defenses and an inadequate class representative); *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1156 (C.D. Ill. 1991) (since option holder's claim was "not typical of stock purchaser's claim," option holder could "only represent a class of option holders,

3

not stockholders"); and *Leech*, 2006 WL 3690736, at *3 (individual investor with atypical trading in defendant's shares "may be subject to unique an individualized defenses that preclude him from being selected plaintiff"); *but see In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52 (D. Mass. 2005).

As an options trader, there is a question as to whether Newvana relied directly on the market price of Tetraphase stock or on the price of the put or call option contracts, which are affected by factors extraneous to the price of the underlying stock, including, "the maturity, the volatility of the price of the [Tetraphase] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded." *Andrada*, 2005 WL 912359, at *5. Accordingly, Newvana's potential role, as Lead Plaintiff, would trigger factual issues about whether it was relying on the integrity of Tetraphase's price and/or whether the reliability of the stock price affects the price of a put options contract or the value of an option premium. *See Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) (presumption of reliance may be rebutted by showing that the plaintiff did not rely on the market price in purchasing the securities at issue).

Here, Newvana's revised certification and loss chart reveal that its trading was heavily concentrated in Tetraphase put options. *See* ECF Nos. 28-1, 28-2. As such, a large proportion of Newvana's claimed losses are attributable to its purchases of Tetraphase stock as a result of the exercise of put options, after the Class Period. *Id*. During the alleged Class Period, between March 5, 2015 and September 8, 2015, Newvana purchased 46,300 shares of Tetraphase common stock and sold 26,100 shares of Tetraphase common stock, in addition to the sale of 1,850 Tetraphase put options.[3] *Id*. Notably, Newvana was forced to buy 115,000 more common shares when the put options were exercised by the holders of such options. For this reason, the majority of the stock that Newvana was forced to buy, due to the selling of put options, was

---

[3] Options are often priced such that each contract, or lot, represents the number of contracts contained in one derivative security. For equity options, a lot often represents exercise rights for 100 underlying shares of common stock. Accordingly, it is difficult to determine the true number of shares underlying Newvana's options transactions.

purchased *after* the Class Period ended.  Newvana's interest is, therefore, not aligned with the putative Class and is a threat, should it become the focus of the litigation (particularly on Class certification), rendering Newvana atypical and inadequate to represent the putative Class.

Newvana's options trading strategy encumbers the putative Class with unique defenses, rendering its claims atypical and Newvana inadequate to be appointed Lead Plaintiff. Conversely, Plymouth is an institutional investor that is typical of the putative Class.  Unlike Newvana's claimed losses, Plymouth's losses result entirely from common stock purchased during the Class Period.  Alternatively, Newvana has to defend more than half of its losses that are based on options trading and of those losses, must argue that losses on stock purchased after the Class Period should count.  Its contention for lead plaintiff should not depend on its options-related losses, where an institutional investor, like Plymouth, with the single largest loss, due to non-options forced stock purchases, is willing to serve.

For these reasons, Newvana's trading strategies render it atypical to serve as Lead Plaintiff.  *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (refusing to appoint as lead plaintiff an investor that specialized in options trading finding that it "may have been subject to unique defenses based on its method of doing business"); *see also In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (denying the lead plaintiff motion of an investor that engaged in unique trading strategies).  An options trader like Newvana – even one claiming the largest financial interest – cannot be the most adequate plaintiff when the Class consists of common stock purchasers because the options trader does not satisfy Rule 23's adequacy and typicality requirements with regard to that class.  *See Weikel*, 183 F.R.D. at 392.

### III. Plymouth Should Be Permitted to Conduct Limited Discovery into Newvana's Suitability to Lead the Class

Newvana's certification and declaration does not provide any information surrounding its trading and business operations and as such, Plymouth respectfully requests that the Court allow limited discovery of Newvana, pursuant to 15 U.S.C. §77z-1(a)(3)(B)(iv).  The PSLRA allows

"discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff" when there exists "a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iv); *see also* Guglielmo Decl., Ex. A at 5-6, Memorandum and Order Re: Motions for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, *Brown v. Biogen IDEC Inc.*, No. 1:05-cv-10400-WGY (D. Mass. July 26, 2005) (limited discovery ordered from a movant whose transactions in the defendant's securities were unclear from the record); and Guglielmo Decl., Ex. B at 2, Order for Limited Discovery Prior to Selection of Lead Plaintiff, *In re Michaels Stores, Inc. Sec. Litig.*, No. 3:03-cv-00246-M (N.D. Tex. July 10, 2003) (limited discovery of movant after questions regarding her adequacy had been raised).

There is nothing in the record to evidence that Newvana is adequate to represent the Class or that its purchases were typical of the rest of the Class.  These questions will surely be asked by Defendants and the answers may prejudice the putative Class.  By not initially disclosing information surrounding its trading and business operations, Newvana is delaying the resolution of the lead plaintiff motions, thereby demonstrating its inadequacy to vigorously represent the interests of the Class.  As such, a reasonable basis exists to conduct limited discovery into Newvana.

## CONCLUSION

For the foregoing reasons, Plymouth respectfully requests that the Court deny the competing motions for appointment of Lead Plaintiff, appoint Plymouth as Lead Plaintiff in this action, and approve its selection of Scott+Scott, Attorneys at Law, LLP, to serve as Lead Counsel.

Dated:  April 11, 2016                     Respectfully submitted,
                                           **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

                                           */s/ Joseph P. Guglielmo*
                                           Joseph P. Guglielmo (BBO #671410)
                                           The Chrysler Building

405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
Thomas L. Laughlin
Joseph V. Halloran
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
jhalloran@scott-scott.com

*Counsel for Proposed Lead Plaintiff Plymouth County Retirement System and Proposed Lead Counsel for the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2016.

    */s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (BBO #671410)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com